[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-13338

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 2, 2011
JOHN LEY
CLERK

D.C. Docket No. 2:09-cr-00027-MHT-WC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EUGENE LAMAR PENDLETON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

(December 2, 2011)

Before DUBINA, Chief Judge, COX, Circuit Judge, and HUNT,[*] District Judge.

PER CURIAM:

_____

[*]Honorable Willis B. Hunt, Jr., United States District Judge for the Northern District of Georgia, sitting by designation.

## I.

Appellant Eugene Lamar Pendleton appeals his convictions on federal drug and firearms charges. During the course of the proceedings that resulted in a mistrial, the government conceded that a surveillance video purporting to depict Pendleton engaging in a crack cocaine transaction actually depicted someone else. Following the mistrial, a federal grand jury issued a superseding indictment charging Pendleton with, among other things, possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) (Count 2); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count 3); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (Count 4).

Pendleton based two pretrial motions on the government's concession: a motion to dismiss the superseding indictment, which he contended was tainted by the testimony of a government agent that Pendleton was engaged in crack cocaine transactions; and a motion to suppress evidence recovered in a December 24, 2008, search pursuant to a warrant that he contended was supported by the intentionally or recklessly false statements of Detective R.K. Johnson, the affiant officer. The court denied both motions, and the case proceeded to trial, where numerous witnesses testified against Pendleton. Ultimately, the jury found him

guilty on the three aforementioned counts. Pendleton moved for a new trial, essentially reiterating his suppression arguments, which the court denied without opinion. In a post-trial order confirming its earlier oral denial of the motion to suppress, the district court found that Detective Johnson acted with reckless disregard for the truth in identifying Pendleton in the affidavit as the crack seller but that suppression was unwarranted because the affidavit, even without the language identifying Pendleton, established probable cause sufficient to support a warrant.

## II.

On appeal, Pendleton raises four issues. First, he argues that the district court abused its discretion in denying his motion to dismiss the superseding indictment because the grand jury that issued it was exposed to a government witness's false testimony and also reviewed evidence that was recovered following an unlawful search. Second, he argues that the district court erred in denying his motion to suppress because Detective Johnson's false statements, made with reckless disregard for the truth, tainted the rest of the affidavit such that probable cause did not exist to issue the warrant. Third, he argues that the evidence presented at trial was insufficient to convict him of the charged offenses because it was inadequate to connect him to the residence where the contraband was

3

recovered.  Finally, he argues, for the first time on appeal, that the district court abused its discretion in denying his motion for a new trial because its post-verdict ruling that Detective Johnson acted with reckless disregard for the truth, if known prior to trial, would have resulted in his acquittal on all charges.

After reviewing the record, reading parties' briefs, and having the benefit of oral argument, we affirm Pendleton's convictions.

## III.

We review a district court's denial of a motion to dismiss an indictment for abuse of discretion, but review its legal reasoning *de novo*.  *United States v. Wetherald*, 636 F.3d 1315, 1320 (11th Cir. 2011).

The grand jury is permitted to consider evidence that otherwise would be inadmissible—including evidence obtained in violation of the Fourth Amendment. *See United States v. Calandra*, 414 U.S. 338, 34–55, 94 S. Ct. 613, 620–23, (1974) (holding that the exclusionary rule did not apply to grand jury proceedings).

Where the government uses or elicits false testimony during criminal proceedings, it will not amount to prosecutorial misconduct unless the prosecutor either: (1) knowingly used perjured testimony; or (2) failed to correct what he later learned to be false testimony.  *United States v. McNair*, 605 F.3d 1152, 1208 (11th

4

Cir. 2010). Even then, the testimony must be material. *Id.* at 1208–11 (holding that prosecutorial misconduct did not occur because there was nothing to suggest that the testimony actually was false). If prosecutorial misconduct occurs in the context of a grand jury proceeding, the proper remedy is to dismiss the indictment. *United States v. Accetturo*, 858 F.2d 679, 681 (11th Cir. 1988).

Nevertheless, "dismissal of an indictment for prosecutorial misconduct is an extreme sanction which should be infrequently utilized." *Id.* Even if an error occurs before a grand jury, it will not be cause to question an indictment unless the error "substantially influenced" the grand jury's decision to issue charges, or if grave doubt existed that the decision was free from such influence. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263, 108 S. Ct. 2369, 2378 (1988) (holding that errors did not substantially influence the grand jury's decision to charge the defendants where a grand jury investigation lasted 20-months and "involv[ed] dozens of witnesses and thousands of documents").

There is nothing in the record to suggest that the testimony of the government's witness before the grand jury, which was based on his personal knowledge at the time, was intentionally false. Even if it was, it did not substantially influence the grand jury's decision, as the charges in the superseding indictment were based on incidents unrelated to the allegedly false testimony.

5

Lastly, even if the currency on Pendleton's person was obtained in violation of the Fourth Amendment, the grand jury is not precluded from reviewing it.

**IV**.

We review the denial of a motion to suppress as a mixed question of law and fact, reviewing legal questions *de novo* and factual questions for clear error. *United States v. Martinelli*, 454 F.3d 1300, 1306 (11th Cir. 2006). Similarly, we review *de novo* whether probable cause existed to support a search warrant. *Id.* (quotation omitted).

To obtain a warrant to search a defendant's residence, law enforcement must convince the authorizing magistrate that probable cause exists for the search, which occurs "when the totality of the circumstances allows the conclusion that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *See United States v. Kapordelis*, 569 F.3d 1291, 1310 (11th Cir. 2009) (quotation omitted). The affidavit need not allege that any illegal activity occurred at the residence. *Id.* Still, it should "establish a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity." *Id.*; *but see United States v. Martin*, 297 F.3d 1308, 1314–15 (11th Cir. 2002) (holding that probable cause existed to support a warrant notwithstanding the fact that the affidavit did not specifically link the

6

defendant to either criminal activity or the place to be searched, but contained detailed factual allegations concerning illicit activities at that place).

Affidavits supporting search warrants are "presumptively valid." *United States v. Gamory*, 635 F.3d 480, 490 (11th Cir. 2011). However, a defendant may attack the government's affidavit by making a substantial preliminary showing that the affidavit included a false statement that was either made: (1) knowingly and intentionally or (2) with reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 171, 98 S. Ct. 2674, 2684 (1978).

Nevertheless, "even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Kapordelis*, 569 F.3d at 1309 (11th Cir. 2009) (quotation and alteration omitted). The burden is on the defendant to establish that, "absent those misrepresentations or omissions, probable cause would have been lacking." *Gamory*, 635 F.3d at 490–91 (quotation omitted). In assessing whether the alleged false statements in an affidavit are material, the district court should disregard the challenged portions of the affidavit. *Kapordelis*, 569 F.3d at 1309. The court must then determine whether the remaining portions of the affidavit establish probable cause. *Id.* If the affidavit, even after excising the allegedly offensive content, remains sufficient to establish probable cause, then no further inquiry is

required. *Id.* (rejecting the argument that a intentionally or recklessly false information taints an entire affidavit even after it is excised).

We need not consider whether Detective Johnson acted with reckless disregard for the truth when swearing that Pendleton was observed engaging in crack deals. Assuming *arguendo* that he did act with reckless disregard for the truth, the affidavit, independent of any reference to Pendleton, continued to contain statements concerning drug transactions at the residence the warrant targeted. Because these statements were sufficient to establish probable cause that documents relating to drug transactions would be found at that residence, we conclude that the district court did not err by denying the motion to suppress.

## V.

The sufficiency of the government's evidence produced at trial is a question of law subject to *de novo* review. *United States v. Spoerke*, 568 F.3d 1236, 1244 (11th Cir. 2009).

In reviewing the sufficiency of the evidence, the inquiry is whether, after viewing the evidence in the light most favorable to the prosecution with all reasonable inferences and credibility choices made in the government's favor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*. As such, we will not disturb a guilty verdict unless "no trier

8

of fact could have found guilt beyond a reasonable doubt." *United States v. Yost*, 479 F.3d 815, 818–19 (11th Cir. 2007) (quotation omitted).

It is the jury's responsibility to weigh and resolve conflicts in the evidence. *United States v. Pearson*, 746 F.2d 787, 794 (11th Cir. 1984). The district court is prohibited from assessing the credibility of witnesses or substituting its own judgment of guilt or innocence for that of the jury. *United States v. Burns*, 597 F.2d 939, 941 (5th Cir. 1979). Thus, the jury's credibility determination must stand unless the testimony is incredible as a matter of law. *United States v. Steele*, 178 F.3d 1230, 1236 (11th Cir. 1999). Testimony is legally "incredible" only if it is "unbelievable on its face" and "relates to facts that the witness could not have possibly observed or events that could not have occurred under the laws of nature." *Id*.

To convict a defendant under 21 U.S.C. § 841(a)(1), the government must prove that the defendant (1) knowingly (2) possessed marijuana (3) with intent to distribute it. *See United States v. Harris*, 20 F.3d 445, 453 (11th Cir. 1994). Each of these elements, including intent to distribute, may be proven by direct or circumstantial evidence. *Id*.

Possession may be actual or constructive. *United States v. Tinoco*, 304 F.3d 1088, 1123 (11th Cir. 2002). In the latter case, constructive possession occurs

9

when the "defendant maintained dominion or control over the drugs or over the premises where the drugs are located." *Harris*, 20 F.3d at 453. (quotation omitted). As such, when a defendant owns or otherwise exercises control over a residence where contraband is found, he may be found to be in constructive possession of that contraband. *United States v. Garcia*, 447 F.3d 1327, 1338 (11th Cir. 2006); *see also United States v. Morales*, 868 F.2d 1562, 1573 (11th Cir. 1989) (holding that rent receipts and an electric bill for an apartment in defendant's name was sufficient to establish his dominion and control over that apartment).

To establish possession of a firearm in furtherance of a drug trafficking crime pursuant to 18 U.S.C. § 924(c)(1), the government must show that: (1) the defendant possessed the firearm; and (2) the firearm in question "helped, furthered, promoted, or advanced" the drug trafficking activity. *See United States v. Timmons*, 283 F.3d 1246, 1252 (11th Cir. 2002).

To support a conviction under 18 U.S.C. § 922(g)(1), the government must prove that: (1) the defendant was a convicted felon; (2) the defendant knew he was in possession of a firearm; and (3) the firearm affected or was in interstate commerce. *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004).

After the government introduced the marijuana and guns recovered during the December 24, 2008 search, it introduced numerous witnesses to testify that

Pendleton resided at the address where the search occurred. It also introduced witnesses who had seen Pendleton engaged in drug deals at that address and in actual possession of the recovered guns. Pendleton did not demonstrate that the testimony of any of these witnesses was legally incredible. Accordingly, we conclude that the government presented sufficient evidence upon which a reasonable jury could find him guilty beyond a reasonable doubt of each offense of conviction.

## VI.

We review the district court's rulings on motions for a new trial for abuse of discretion. *United States v. Thompson*, 422 F.3d 1285, 1294–95 (11th Cir. 2005). Criminal arguments raised for the first time on appeal, however, are reviewed for plain error. *United States v. Fontenot*, 611 F.3d 734, 737 (11th Cir. 2010). Reversal under this standard is permitted only when: (1) there is error; (2) that is plain; (3) that affect's a defendant's substantial rights; and (4) "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation omitted). An error is plain when it is "obvious" or "clear under current law." *Id.* Thus, "there can be no plain error where there is no precedent from the Supreme Court or this court directly resolving it." *Id.* (quotations omitted).

A defendant may move a court for a new trial, which the district court retains discretion to grant in the "interests of justice." Fed. R. Crim. P. 33(a). A motion based on newly discovered evidence must be filed within three years of the verdict. Fed. R. Crim. P. 33(b)(1). When a motion for a new trial is based on new evidence, the evidence in question: (1) must have in fact been discovered after trial; (2) must be discovered following the exercise of due care; (3) cannot be "merely cumulative or impeaching"; (4) must be material; and (5) must be "of such a nature that a new trial would probably produce a different result." *Thompson*, 422 F.3d at 1294 (quotations omitted). Failure to satisfy any of these requirements will be fatal to the motion for a new trial. *Id.* When a court is convinced that a new trial would not produce a different result, it need not inquire into the other requirements. *United States v. Starett*, 55 F.3d 1525, 1554 (11th Cir. 1995).

Although evidence going solely to a witness's credibility is disfavored under this five-part test, newly-discovered evidence may raise questions concerning the fairness of the trial itself. *United States v. Williams*, 613 F.2d 573, 575 (5th Cir. 1980) (holding that a juror's short, *ex parte* contact with the district court did not impugn the fairness of the proceedings sufficient to warrant a new trial).

12

In the absence of any controlling authority establishing that a district court's post-verdict opinion confirming its oral ruling on a pretrial motion to suppress is sufficient grounds for a new trial, Pendleton cannot establish that the district court plainly erred in refusing to grant a new trial on this basis. In any event, a new trial was unwarranted because even if Detective Johnson had not testified at trial at all, the numerous other witnesses who testified to Pendleton's control over the contraband and the residence where it was recovered overwhelmingly established Pendleton's guilt. Our confidence in the jury's verdict is undisturbed.

## VII.

For the above-stated reasons, we affirm Pendleton's convictions.

**AFFIRMED.**